UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRINITY J.[1],                                   Case No. 1:20-cv-644
    Plaintiff,                              Litkovitz, M.J.

vs.

COMMISSIONER OF                     **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Trinity J. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 18).

**I. Procedural Background**

As a child, plaintiff received SSI. When she turned eighteen years old, the Social Security Administration redetermined her eligibility as required by 20 C.F.R. § 416.987 and found that she was no longer under a disability. This determination was upheld upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before Administrative Law Judge ("ALJ") Anne Shaughnessy. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on October 17, 2019. On December 3, 2019, the ALJ issued a decision finding that plaintiff's disability ended on November 1, 2018, and she had not become disabled again since that date. (Tr. 18-29). Plaintiff's request for review by the Appeals Council

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

2

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] attained age 18 [in] August [xx], 2018, and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. The [plaintiff] was notified that she was found no longer disabled as of November 1, 2018, based on a redetermination of disability under the rules for adults who file new applications.
>
> 2. Since November 1, 2018, the [plaintiff] has had the following severe impairments: chronic pain in the left knee, generalized anxiety disorder, and agoraphobia (20 CFR 416.920(c)).
>
> 3. Since November 1, 2018, the [plaintiff] did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, [the ALJ] finds that since November 1, 2018, the [plaintiff] has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can occasionally climb ladders, ropes, and scaffolds. She can crawl occasionally. She should avoid all exposure to hazards such as unprotected heights or dangerous moving machinery. She can complete short cycle tasks in a setting that does not have fast pace demand. She can have occasional interaction with co-workers. She could perform work with a set routine, where major changes are explained in advance.
>
> 5. The [plaintiff] has no past relevant work (20 CFR 416.965).
>
> 6. The [plaintiff] was born [in] . . . 2000 and is a younger individual age 18-49 (20 CFR 416.963).

> 7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).
>
> 9. Since November 1, 2018, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969a).[2]
>
> 10. The [plaintiff]'s disability ended on November 1, 2018, and the [plaintiff] has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(Tr. 20-29).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[2] The ALJ relied on the VE's testimony to find that since November 1, 2018, plaintiff would be able to perform the requirements of representative light, unskilled occupations such as sorter (90,000 jobs in the national economy); packer (150,000 jobs in the national economy); and housekeeper/cleaner (100,000 jobs in the national economy). (Tr. 28, 96-97).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors

On appeal, plaintiff alleges four issues: that the ALJ erred by (1) failing to include all the restrictions in the residual functional capacity ("RFC") by departing from the opinions of the state agency psychological consultants; (2) improperly evaluating the restrictions and limitations caused by plaintiff's chronic pain and agoraphobia; (3) failing to evaluate plaintiff's subjective allegations of pain and limitations; and (4) relying on answers to improper hypothetical questions posed to the VE. (Doc. 14). In response, the Commissioner generally contends that the ALJ's decision is supported by substantial evidence. (Doc. 17).

#### 1. The ALJ did not err in her RFC determination (first assignment of error).

In her first assignment of error, plaintiff alleges that the ALJ erred in formulating the RFC by failing to adopt the state agency psychologists' restriction that plaintiff be limited to "superficial contact." (Doc. 14 at PAGEID 613-14) (citing Tr. 127, 485). Plaintiff specifically argues that the ALJ erred by limiting plaintiff's interaction with co-workers and supervisors to "occasional" as opposed to "superficial." (*Id*.). In response, the Commissioner argues that the ALJ did not err in declining to adopt every limitation of the state agency psychologists because there is no requirement that the ALJ was required to wholesale adopt their phrasings or their findings in assessing plaintiff's RFC. (Doc. 17 at PAGEID 632-33).

Dr. Kristen Haskins, a state agency psychologist, reviewed plaintiff's file in November 2018 and concluded that plaintiff was "moderately limited" in her ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremities, and respond appropriately to changes in the work setting. (Tr. 126-27). Dr. Haskins stated that plaintiff could complete short cycle tasks in a setting that did not have a fast pace demand. (Tr. 127). Dr. Haskins opined that plaintiff was "not significantly limited" in her ability to understand, remember, and carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, and set realistic goals or make plans independently of others. (Tr. 126-27). Dr. Haskins stated that plaintiff could work within a set routine where major changes were explained in advance and gradually implemented to allow plaintiff time to adjust to the new expectations. (Tr. 127).

Dr. Haskins also opined that plaintiff exhibited "no evidence of limitation" in her ability to remember locations and work-like procedures, understand, remember, and carry-out very short and simple instructions, ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness.

(Tr. 126-27). Dr. Haskins opined that plaintiff was capable of engaging in "superficial interaction with others in the workplace." (Tr. 127).

Dr. Jennifer Swain conducted an assessment on January 15, 2019 in which she opined that plaintiff could complete short cycle tasks in a setting that did not have fast pace demand; she was "capable of engaging in superficial interaction with others in the work place"; and she could work within a set routine where major changes were explained in advance and gradually implemented to allow plaintiff time to adjust to new expectations. (Tr. 485).

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making administrative findings of fact and conclusions of law." 20 C.F.R. § 404.1513a. In determining disability, the ALJ will consider the medical opinions in the case record along with the other relevant evidence. 20 C.F.R. § 404.1527(b) (citing 20 C.F.R. § 404.1520b). While physicians may render an opinion on a claimant's functional capacity, the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC). A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security regulations vest the ALJ with the responsibility of assessing an individual's RFC. *See* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC at the administrative hearing level lies with the ALJ). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). This includes weighing the relevant medical opinions of record. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

In this case, the ALJ's RFC finding, in pertinent part, provides that plaintiff "can have occasional interaction with co-workers." (Tr. 22). Plaintiff argues that the ALJ erred by failing to include the state agency psychologists' restriction that plaintiff be limited to "superficial" interactions with coworkers despite finding these opinions to be persuasive. (Doc. 14 at PAGEID 612-13). Plaintiff contends that "occasional" and "superficial" "are not the same and are materially different." (*Id*. at PAGEID 613; *see also* Doc. 18 at PAGEID 641-42).

It is well-established, however, that an ALJ is not required to adopt a medical source's opinion on limitations verbatim in assessing a claimant's RFC. *See* SSR 96-5p, 1996 WL 374183, at *54 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment."). "Although the ALJ may not substitute [her] opinion for that of a physician, [she] is not required to recite the medical opinion of a physician verbatim in [her] residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (finding no error where ALJ gave great weight to state agency psychologists' opinions, which included a limitation to superficial interaction, and ALJ's RFC limited claimant to occasional, not superficial, interaction). Therefore, even if Drs. Haskins and Swain's opinions can be construed as requiring "superficial" interactions with co-workers, the ALJ was not required to accept *verbatim* this limitation.

Plaintiff also alleges the ALJ erred when she failed to explain why she did not adopt the "superficial contact" limitation despite finding the state agency psychologists' opinions to be persuasive. Plaintiff is incorrect. The ALJ acknowledged that she found the state agency consultants' opinions persuasive (per the new rules[3]) but "based on information obtained . . . at the administrative hearing level" provided "somewhat different limitations in order to better quantify the claimant's retained abilities." (Tr. 27). The ALJ thoroughly evaluated the medical and other evidence of record, and plaintiff has failed to cite to any evidence that calls into question the ALJ's justification.

Plaintiff does not explain *how* the ALJ's limitation of "occasional" as opposed to "superficial" interaction with coworkers, without further limitation, is not supported by substantial evidence. Plaintiff has not shown that the ALJ erred by failing to fully account for her alleged impairments and resulting limitations in the RFC finding. Plaintiff has not shown, or identified any evidence in the record, that the evidence before the ALJ required the inclusion of greater limitations than those found by the ALJ with regard to contact with coworkers. Accordingly, the ALJ's RFC is supported by substantial evidence, and plaintiff's assignment of error regarding the ALJ's RFC assessment is without merit and overruled.

### 2. The ALJ's RFC decision is supported by substantial evidence (second assignment of error).

In plaintiff's second assignment of error, plaintiff alleges that the ALJ erred in its determination that plaintiff could sustain work despite plaintiff's severe impairments of chronic

---

[3] For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions. *Id*. The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

pain and agoraphobia. (Doc. 14 at PAGEID 614). Citing to select treatment notes, plaintiff argues that her agoraphobia and chronic pain would cause her to miss more than one day of work per month, which plaintiff contends would be work preclusive. (*Id*. at PAGEID 614-15). As best the Court can discern, plaintiff contends that the "ALJ erred in evaluating [plaintiff's agoraphobia and chronic pain] after finding them [to be severe impairments] in Finding Number 2." (*Id*. at PAGEID 615).

The Commissioner generally argues in response that the ALJ's decision is supported by substantial evidence, and the medical record supports the ALJ's RFC for a reduced range of light work, notwithstanding the ALJ's findings at Step Two of the sequential evaluation process. (Doc. 17).

Contrary to plaintiff's argument, no medical source of record opined that plaintiff would miss more than one day of work per month due to her agoraphobia or chronic pain. Plaintiff fails to cite to any objective medical evidence in the record that would support her allegations.

### a. Agoraphobia

Plaintiff cites to three treatment notes, Tr. 429, 444, 509[4] in support of this assignment of error. (Doc. 14 at PAGEID 614). In its entirety, plaintiff states that the "medical records show" that plaintiff's agoraphobia would "cause her to miss too much work":

> At Tr. 429, she [plaintiff] left the house every two weeks. At Tr. 444, she left her room but not the house. At Tr. 509, she did not leave the house except for appointments. See, also, Tr. 448 and 515. Thus, the question becomes can she attend work 21 out of 22 days a month on average to sustain unskilled work? The answer is no based on the agoraphobia found by the ALJ. This error is in addition to the above error with the ALJ's failure to find the superficial contact on a competitive job.

---

[4] Plaintiff also references Tr. 448 and 515 in support of this assignment of error but provides no further explanation or analysis.

10

(Doc. 14 at PAGEID 614).  Plaintiff, however, makes no attempt to discuss the myriad reasons offered by the ALJ for finding that plaintiff was not disabled despite her severe impairment of agoraphobia.

Plaintiff first cites Tr. 429, which is a treatment note dated November 1, 2018 by Dr. Sara Williams.  Plaintiff appears to argue that this treatment note stands for the proposition that plaintiff's agoraphobia would "cause her to miss too much work."  (Doc. 14 at PAGEID 614).  In a single sentence, with no accompanying explanation, plaintiff states "[a]t Tr. 429, she left the house every two weeks."  (*Id.*).  This treatment note, however, does not denote that plaintiff's failure to leave the house was because of her agoraphobia.  Rather, Dr. Williams indicated it was due to "transportation problems."  (Tr. 429).  Specifically, Dr. Williams stated that plaintiff "is only leaving the house once every two weeks usually for appointments.  She is interested in taking more driving lessons and is hoping that once she drives she will be out of the house more."  (*Id.*).  Dr. Williams further stated that "it's not that she [plaintiff] doesn't want to go places, it's that she can't go there due to transportation problems.  She feels that with her license to drive she will be able to get out more and denies that she will be limited by **anxiety**."  (*Id.*) (emphasis in original).  Plaintiff fails to explain how this treatment note supports the proposition that she would miss more than one day of work per month due to her agoraphobia.

Next, plaintiff cites Tr. 444 and Tr. 509 with the accompanying explanations: "she left her room but not the house," and "she did not leave the house except for appointments."  (Doc. 14 at PAGEID 614).  Plaintiff, however, does not explain how these isolated sections of treatment notes provide support for the proposition that plaintiff would miss more than one day of work per month because of her agoraphobia.

11

Plaintiff specifically fails to explain how the ALJ erred in this regard especially because no medical source opined that plaintiff would miss more than one day of work per month due to her agoraphobia. The ALJ reasonably determined that the frequency and nature of plaintiff's allegations concerning agoraphobia are inconsistent with the medical evidence of record. The ALJ comprehensively examined the medical record and determined that plaintiff was not disabled, despite the existence of plaintiff's agoraphobia. (Tr. 24-27). The ALJ's decision in this regard is supported by substantial evidence.

### b. Chronic pain

Likewise, plaintiff's argument that the ALJ erred by finding that plaintiff could sustain work for 40 hours a week despite her chronic pain (Doc. 14 at PAGEID 614) is also without merit. Despite hundreds of pages of records detailing plaintiff's medical history, plaintiff's argument, in its entirety, consists of three sentences:

> The records show amplified musculoskeletal knee and leg pain (Tr. 438-439, 461, 463, 505, 514-515) along with complex regional pain syndrome at Tr. 521. [Plaintiff] was also seen at the Chronic Pain Clinic at Children[']s Hospital (Tr. 339, 441). Her leg and knee pain are real to her and distract her attention and focus to sustain work for 40 hours a week.

(Doc. 14 at PAGEID 615).

Plaintiff's citation to these records merely documents the existence of a severe chronic pain knee impairment, which the ALJ acknowledged. Plaintiff does not, however, cite to any record evidence connecting plaintiff's chronic knee pain to an inability to work on a sustained basis for 40 hours per week. Although plaintiff has a number of severe impairments, including agoraphobia and chronic pain, plaintiff has failed to point to evidence showing that these impairments impose greater functional limitations than those included in the ALJ's RFC finding or are disabling. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) ("not

every diagnosable impairment is necessarily disabling") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition")).

Moreover, plaintiff fails to explain how the ALJ erred in evaluating plaintiff's chronic pain. Plaintiff wholly fails to address the numerous reasons given by the ALJ for evaluating plaintiff's chronic pain, including the ALJ's findings that the nature of plaintiff's allegations were inconsistent with the objective medical evidence of record which did not support total work preclusion; that the majority of the medical evidence of record demonstrated underwhelming treatment consisting largely or routine primary care with no substantial physical findings suggestive of the need for greater restrictions than outlined in the ALJ's RFC; that the primary care records described less than ideal compliance with recommended care; that the medical evidence of record failed to document signs typically associated with chronic, severe pain, such as muscle atrophy, spasms, rigidity, or tremors; that the medical record does not document any substantial chronic issues stemming from plaintiff's knee complaints that would otherwise warrant total work preclusion; and that objective testing since the alleged onset date had consistently shown normal strength and range of motion in the lower extremities. (Tr. 23, 25-27).

Substantial evidence supports the ALJ's evaluation of plaintiff's agoraphobia and chronic pain impairments. Accordingly, plaintiff's second assignment of error is overruled.

### 3. The ALJ's evaluation of plaintiff's subjective allegations of pain and limitations is supported by substantial evidence (third assignment of error).

In the third assignment of error, plaintiff alleges that the ALJ erred in evaluating plaintiff's subjective allegations of pain and limitations. (Doc. 14 at PAGEID 615-16). Plaintiff

13

specifically argues that the ALJ failed to properly analyze plaintiff's chronic pain and agoraphobia, despite finding they are severe impairments. (*Id*.). Plaintiff contends her testimony shows she would miss "over one day of work a month and is disabled," but the ALJ failed to account for this testimony. (*Id*.).

The Commissioner argues that substantial evidence supports the ALJ's determination as to plaintiff's subjective statements about the intensity, persistence, and limiting effects of plaintiff's symptoms and impairments. (Doc. 17 at PAGEID 634-38).

As described above in the second assignment of error, the ALJ did not err in evaluating plaintiff's subjective complaints of pain and other symptoms. Title 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, 2016 WL 1119029, *3 (March 16, 2016) describe a two-part process for evaluating an individual's subjective statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3). The ALJ's assessment of a claimant's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247.

Plaintiff has not shown that the ALJ erred in evaluating plaintiff's subjective complaints and limitations relating to her chronic pain and agoraphobia.  The ALJ thoroughly reviewed the medical evidence related to plaintiff's impairments and gave several reasons why she did not find plaintiff's subjective complaints to be fully supported by, and consistent with, the medical records.  (*See* Tr. 23-27).  The ALJ specifically noted among other reasons that the record as a whole did not support plaintiff's allegations of disabling mental or physical impairments.  (*Id*.).  For example, the ALJ noted that the objective evidence of record documented underwhelming treatment which consisted largely or routine primary care with no substantial physical findings suggestive of the need for greater restrictions than outlined in the ALJ's RFC.  (Tr. 23).  The ALJ also stated that the record revealed less than ideal compliance with recommended care which was inconsistent with plaintiff's subjective allegations of pain and limitations.  (Tr. 23-24, 26).

Plaintiff mirrors her arguments in the second assignment of error by citing isolated sections from select treatment notes as evidence that the ALJ erred in evaluating plaintiff's symptoms of pain and limitations.  (Doc. 14 at PAGEID 615-16).  As previously discussed in connection with plaintiff's second assignment of error, however, the ALJ expressly considered this evidence (Tr. 23-27) and therefore did not err in this regard.

Plaintiff has not pointed to any specific evidence in the record to show the ALJ's evaluation of plaintiff's subjective complaints of pain and limitations was flawed or was not substantially supported.  Accordingly, plaintiff's third assignment of error is without merit and overruled.

> **4. The ALJ committed no error in posing hypothetical questions to the VE (fourth assignment of error).**

15

In the fourth assignment of error, plaintiff alleges the ALJ erred at Step Five of the sequential evaluation process by posing "improper hypothetical questions" to the VE. (Doc. 14 at PAGEID 617). Plaintiff recounts the arguments put forth in the first, second, and third assignments of error and contends that the ALJ's questions were "improper" because (1) the ALJ did not include the limitation that plaintiff be limited to "superficial contact," as found by the state agency psychologists, and (2) the ALJ "did not ask about the days missed, even though the ALJ later found the agoraphobia in Finding Number 2" and plaintiff "can only miss one day a month." (*Id.*). Within this assignment of error, plaintiff argues that the "vocational witness testimony was also deficient since the vocational witness could not define short cycle tasks except to say this meant unskilled work." (*Id.*).

The Commissioner argues that the ALJ properly relied upon the VE's responses to hypotheticals that incorporated the ALJ's assessment of plaintiff's limitations. (Doc. 17 at PAGEID 638-39).

Here, plaintiff did not have past relevant work. (Tr. 28). Therefore, in Step Five of the sequential evaluation process, the burden shifts to the ALJ to show that jobs exist in significant numbers in the national economy that the claimant can perform. *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). The ALJ's reliance on the testimony of a VE in response to a hypothetical question may serve as substantial evidence that the claimant has the ability to perform specific jobs, but only if the hypothetical question accurately portrays the claimant's physical and mental impairments. *Id.* (citing *Varley*, 820 F.2d at 779). *See also Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 290 (6th Cir. 2014) (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)). In posing a hypothetical question to the VE, the ALJ is not required to

16

incorporate those limitations the ALJ reasonably finds are not supported by the medical and other evidence. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). However, the ALJ errs if she relies on VE testimony given in response to a hypothetical question that omits restrictions the ALJ improperly found were not supported by the evidence. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009).

Plaintiff has not shown that the ALJ erred by relying on hypothetical questions to the VE that did not accurately portray plaintiff's impairments or functional limitations. As explained above, the ALJ was not required to include limitations in the hypotheticals to the VE that were discounted on the ground they were not supported by the record. For the reasons explained in connection with plaintiff's first, second, and third assignments of error, the ALJ's evaluation of the record and inclusion of corresponding limitations in the RFC is substantially supported by the evidence. The ALJ's hypothetical questions to the VE incorporated all of the functional limitations that the ALJ found to be credible and supported by the evidence. (*See* Tr. 96-97). Plaintiff has not shown that the ALJ omitted from the hypotheticals any functional limitations that were substantially supported by the evidence. Accordingly, plaintiff's fourth assignment of error is without merit and overruled.

Plaintiff also alleges that the ALJ erred by relying on the VE's testimony because the VE failed to "define short cycle tasks except to say this meant unskilled work." (Doc. 14 at PAGEID 617). Plaintiff further alleges that 20 C.F.R. § 416.968(a), which defines "unskilled work," fails to discuss "short cycle tasks," and instead merely defines "unskilled work" as work involving "simple tasks." (*Id.*).

The Commissioner argues in response that the ALJ committed no error in relying on the VE testimony because the VE relied on his personal expertise when the VE defined and

17

explained "short cycle tasks" as meaning "unskilled work activities and simple tasks." (Doc. 17 at PAGEID 638).

To the extent plaintiff alleges error pertaining to the VE's testimony on "short cycle tasks," plaintiff's assignment of error is without merit and overruled. On cross-examination, counsel for plaintiff asked the VE to define the phrase "short-cycle tasks," to which the VE responded that, although the phrase is not defined by the Dictionary of Occupational Titles ("DOT"), "short-cycle tasks" means "unskilled work activities and simple tasks." (Tr. 99). Social Security Ruling 00-4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p. Thus, the ALJ could reasonably rely on the VE's testimony that plaintiff could perform the jobs identified by the VE to satisfy her burden at Step Five of the sequential evaluation process.

Moreover, "courts evaluating this terminology within the Social Security context have found 'short cycle' to mean 'simple and repetitive.'" *Diloreto v. Comm'r of Soc. Sec.*, No. 2:20-cv-2385, 2021 WL 2024590, at *6 (S.D. Ohio May 21, 2021), *report and recommendation adopted*, 2021 WL 2334268 (S.D. Ohio June 8, 2021) (citing cases). In *Diloreto*, the court concluded that the ALJ's RFC was inconsistent with a limitation to "short cycle tasks" because it did "not limit Plaintiff to performing repetitive tasks." (*Id*.). In the instant case, however, the DOT expressly includes the notation that both the representative occupations of "Sorter" and "Housekeeping Cleaner," which were testified to by the VE and relied upon by the ALJ as jobs that exist in significant numbers in the national economy that plaintiff could perform, involve the performance of "REPETITIVE or short-cycle work." (DOT No. 649.687-010, Paper Sorter and Counter, 1991 WL 685669); (DOT No. 323.687-014, Cleaner, Housekeeping, 1991 WL 672783)

18

(emphasis in original).[5] The ALJ's reliance on the VE's testimony is therefore supported by substantial evidence, and plaintiff's fourth assignment of error is overruled.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner is **AFFIRMED** and this case is closed on the docket of the Court.

Date: 1/11/2022

Karen L. Litkovitz
Chief United States Magistrate Judge

---

[5] Even if the packer job identified by the VE did not involve repetitive or short-cycle work, the sorter and cleaner jobs exist in substantial numbers to meet the Commissioner's Step Five burden. (Tr. 28). *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (200 jobs in the region and 6,000 jobs nationwide amounted to "significant numbers" of available jobs) (citing *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009)) (2,000 jobs in the national economy constituted a significant number).